### R. L. SLAUGHTER v. J. H. COOPER.

Decided May 22, 1909.

**1.—Public Lands—Inchoate Sale—Cases Criticized and Distinguished.**

When the State through her authorized officer has made an award of public lands to one authorized to purchase, thereafter the title to the land has so far passed out of the State as to authorize its sale by the awardee thereby creating between himself and his purchaser the relation of vendor and vendee; and when possession accompanies such transfer the purchaser could not thereafter successfully plead a total failure of consideration upon the forfeiture of his vendor's title. Slaughter v. Cooper, 107 S. W., 897, criticized. Lamb v. James, 87 Texas, 485; Raynor Cattle Co. v. Bedford, 91 Texas, 642, and Williams v. Finley, 99 Texas, 468, distinguished.

**2.—Same—Forfeiture for Failure to Occupy—Evidence.**

Under the provisions of section 3, title 87, of the Acts of 1901, no duty is imposed upon the Commissioner of the General Land Office to declare or evidence in any way a forfeiture of public land for failure of the purchaser to reside upon and improve the same; any action therefore by him can not be used as evidence against the purchaser. Therefore in a suit involving the title of a purchaser to public land under said Act it was error to admit in evidence the endorsement of the Commissioner upon the application and obligation of said purchaser, as follows: "Forfeited for failure to reside upon and improve the land as required by law."

**3.—Same—Subsequent Award—Presumption—Evidence—Cases Distinguished.**

A subsequent award by the Commissioner of the Land Office of the same land to a subsequent applicant therefor, affords presumptive evidence that the first sale had been forfeited before the second was made. Smithers v. Lowrance, 100 Texas, 77, and Howard v. McKenzie, 54 Texas, 171, distinguished. Chief Justice Conner, dissenting.

Appeal from the County Court of Martin County. Tried below before Hon. Bailey Anderson.

*Caldwell & Whitaker,* for appellant.—A subsequent award of land, the same having been previously awarded to another, even though the first award has been canceled, determines no rights of the respective parties, nor does it even afford presumptive evidence that a correct award has been made in the second instance. Williams v. Barnes, 111 S. W., 434; Mound Oil Co. v. Terrell, 92 S. W., 453; Patterson v. Knapp (Sup.), 102 S. W., 97; Smithers v. Lowrance (Sup.), 93 S. W., 1064.

*A. L. Green, S. J. Isaacks* and *Graham B. Smedley,* for appellee.— Where an officer has acted within the scope of his powers in the absence of proof to the contrary, the existence of facts necessary to authorize his action will be presumed. Smithers v. Lowrance, 93 S. W., 1064; Houston v. Perry, 3 Texas, 390.

SPEER, ASSOCIATE JUSTICE.—This is the second appeal in this case, the opinion in the former appeal having been delivered by the Court of Civil Appeals for the Sixth District and reported in 107 S. W., 897. A reference to that opinion will disclose the nature of the case.

While the cause is now to be affirmed, yet we deem it proper to say in passing that we are not quite prepared to assent to the rule announced by Mr. Justice Levy in that opinion, that "the title to the land in this case had not so far passed out of the State as to make the land the subject matter of private contract between appellant and appellee and to create the relation of vendor and vendee as to the land itself." The cases of Lamb v. James, 87 Texas, 485, and Raynor Cattle Co. v. Bedford, 91 Texas, 642, are cited for the holding, and the reason for this announcement is that the lands involved were considered to be a part of the public domain. But we are inclined to the view that where, as here, the State through her regularly authorized officer has made an award of public lands to one authorized to purchase, thereafter the land has so far passed out of the State as to authorize its sale by such awardee, thereby creating between himself and his purchaser the relation of vendor and vendee, and that possession accompanying such transfer, the purchaser could not thereafter successfully plead a total failure of consideration upon the forfeiture of his vendor's title. The rule first announced in Lamb v. James and afterward explained in Raynor Cattle Co. v. Bedford, and still later again explained in Williams v. Finley, 99 Texas, 468, authorizing the plea of failure of consideration where the land, the subject matter of contract, is a part of the public domain, does not, we think, extend to a case like this.

A ruling of the court which appears to present error was made, however, in admitting over the objections of appellant the certified copy of Slaughter's application and obligation containing the indorsement, "Forfeited for failure to reside upon and improve the land as required by law, November 17, 1905. John J. Terrell, Commissioner." If this indorsement was one required of the Commissioner by law, proof of the entry no doubt would be permitted under the well-established rules of evidence, but if it is the mere *ex parte* statement of the Commissioner, made without any express authority of law, it should not be.

Article 4218-1, Sayles' Texas Civil Statutes, provides that: "If upon the first day of November of any year the interest due on any obligation remains unpaid, the Commissioner of the General Land Office shall endorse on such obligation 'Land forfeited,' and shall cause an entry to that effect to be made on the account kept with the purchaser," etc. It also provides: "And if any purchaser shall fail to reside upon and improve in good faith the land purchased by him, he shall forfeit said land and all payments made thereon to the State, in the same manner as for nonpayment of interest, and such land shall be again for sale as if no such sale and forfeiture had occurred." And the Supreme Court has construed this provision to impose upon the Commissioner the duty of declaring a forfeiture for a failure to reside upon and improve the land. (Bates v. Bratton, 96 Texas, 279.)

But the lands in question were originally sold under, and the de-

cision of the question must therefore be controlled by, the provisions of section 3, title 87, of the Acts of 1901. The law is there made to read: "If any purchaser shall fail to reside upon and improve in good faith the land purchased by him, as required by law, he shall forfeit said land and all payments made thereon to the State, to the same extent as for the nonpayment of interest, and such land shall be again upon the market as if no such sale and forfeiture had occurred, and all forfeitures for non-occupancy shall have the effect of placing the land upon the market without any action whatever on the part of the Commissioner of the General Land Office." This provision abundantly evidences the intention of the Legislature to declare that action by the Commissioner should not be necessary to work a forfeiture of land for failure. of the purchaser to reside upon and improve it. If the Commissioner, then, is not required to take such action, his doing so cannot constitute evidence against the purchaser. In this case the very gist of appellee's cause of action is the failure of appellant's title, and such failure is not proved in any other manner than by the entry above quoted, unless the court ruled properly in admitting in evidence a certified copy of an award to one Heffner of date subsequent to the sale by appellant to appellee, thereby raising the presumption that the first sale had been forfeited before the second was made. While this ruling is itself made the subject of an assignment of error, a majority of us hold that the ruling was correct and not in violation of the decision of Smithers v. Lowrance, 100 Texas, 77, invoked by appellant. The distinction between that case and the present one consists in this: In that case, to have indulged the presumption of the regularity of the second award would have created a conflict with the presumption of regularity attaching to the first award, since the evidence disclosed that the second award was made because of the irregularity of the first award, thereby preventing any presumption that the second award was authorized by virtue of a lawful cancellation of the first award, while in the present case there is no conflict of presumptions whatever. The usual presumption of regularity attaches not only to the first award, but to the second as well, and as to the second is supported upon the theory that the Commissioner had either canceled the first award for nonpayment of interest, or that Slaughter had ceased to occupy and improve the land as required by law, in either of which events the second award would have been authorized, and neither of which is excluded by the evidence, as in the Smithers-Lowrance case. There is no reason in the world for saying that the law will presume in favor of the regularity of one act of a public officer and not in favor of another act equally within the scope of such officer's authority. It may deny the presumption of regularity where such presumption would have to be based upon the assumption of a fact shown not to exist, but this argues nothing against the rule in favor of the presumption referred to. It is always presumed that in any official act, or act purporting to be official, the officer has not exceeded his authority; and if he had power to act only in a certain contingency, then that the contingency has happened, where there is no evidence on either side with respect thereto. (Throop, Public Officers, sec. 558.)

Neither is the decision in Howard v. McKenzie, 54 Texas, 171,

when rightly understood, at all different from what we have here announced. In that case, to permit the inference that a cancellation of a patent was regular would have required the inference that the patent was wrongfully issued in the first place, thereby destroying the presumption of regularity as to such issue. In the present case there is no conflict of presumptions whatever, the presumption obtaining equally with reference to the Slaughter and to the Heffner awards, the former implying that the land was duly classified and appraised, and that the awardee was a settler, etc., at the time, and the latter, that for some reason authorized by law the first award was not in good standing, and that the land was again on the market at the time of the sale to Heffner. If, then, there was no error in admitting in evidence the award to Heffner, the error of the court in admitting the declarations of the Commissioner as to the forfeiture becomes harmless, since the award to Heffner, *prima facie,* at least, proves the nonoccupancy by Slaughter, and in the absence of any other evidence to overcome it, is conclusive. The judgment is in all things affirmed.

*Affirmed.*

CONNER, CHIEF JUSTICE, *dissenting.*—I feel unable to concur in the final conclusion reached by the majority. It seems clear, as the majority correctly conclude, that under the Act of 1901 the indorsement of forfeiture by the Commissioner of the General Land Office on the application and obligation of appellant Slaughter affords no legal evidence of the invalidity of the Slaughter title purchased by appellee, and I am not prepared to join the majority in the further conclusion that the subsequent award to Heffner constitutes such presumptive evidence of the illegality of the Slaughter title as warrants the affirmance of the judgment on that ground. Forfeitures are not favored in the law, and as against appellant, who was the defendant below and not a party to the *ex parte* forfeiture proceedings, the burden of proof was upon appellee. To say that this burden was overcome and the forfeiture shown by the mere fact of the subsequent award, seems to me to violate the principle of the cases of Smithers v. Lowrance and Howard v. McKenzie discussed by the majority. The presumption of the existence of the facts authorizing the award to Heffner is not the only presumption in this case. It must be presumed that the award to Slaughter was authorized, and that he was then the lawful occupant of the land, and that such occupancy or state of things continued as such occupancy usually continues unless the contrary is shown. It was Slaughter's pecuniary interest as a purchaser of school lands to pay the annual dues to the State, and his duty as well as his interest to continue his occupancy, and the common experience of mankind authorizes the presumption that he did both to avoid loss, so that, as it appears to me, the presumption indulged by the majority is used to overcome other presumptions of equal force, thus contravening the cases sought to be distinguished by the majority, as well as other authorities that might be cited.