## FULLERTON LUMBER CO. v. TINKER et al.

Under Rev. Pol. Code, §§ 868-871, requiring the register of deeds to keep a numerical index of mortgages, which shall show the names of the grantors and grantees, dates of instruments and of filing, and description of property, a purchaser of land is charged with constructive notice of a mortgage thereon, given by one not in his chain of title, which an examination of such index would disclose, putting him on inquiry as to the mortgagor having an equitable title.

All public officers are presumed to have performed their duty, so that a register of deeds will be presumed to have properly kept the indexes required by Rev. Pol. Code, §§ 868-871.

(Opinion filed, Nov. 18, 1908.)

Appeal from Circuit Court, Charles Mix County. Hon. E. G. SMITH, Judge.

Action by the Fullerton Lumber Company against F. D. Tinker and others. Judgment for plaintiff. Defendant H. B. Williams appeals. Affirmed.

See, also, 21 S. D. 647, 115 N. W. 91.

G. M. Caster, for appellant. C. H. Dillon, for respondent.

CORSON, J. This action was instituted by the plaintiff to foreclose a mortgage executed on a lot in the village of Lake Andes by E. D. Tinker and wife to the plaintiff. Findings and judgment being in favor of the plaintiff, the defendant H. B. Williams has appealed.

The defendant Williams answered the complaint, and alleged that he was a purchaser of the property in good faith, for value, without notice, actual or constructive, of the plaintiff's mortgage, and claimed by reason of these facts that the title of the property in him was superior and paramount to the lien of the plaintiff's mortgage. It appears from the findings of the court that on the 18th day of May, 1904, the Lake Andes Townsite Company, which will hereafter be denominated the "Townsite Company," was the owner of lot 11, in block 25, in the town of Lake Andes, and that

on that day the Townsite Company entered into a verbal agreement with the defendants Tinker and wife to sell to them the said lot for the sum of $250, agreeing with them that they should have a reasonable time in which to pay for the same, and it was further agreed between the Townsite Company and the Tinkers that the latter should have the privilege of taking possession of the lot and erecting a building thereon; that in pursuance of such verbal agreement and arrangement the Tinkers entered into possession of the lot and erected thereon a two-story frame building to be used for restaurant and hotel purposes, and procured the lumber for the erection of the same from the plaintiff company; that on the 27th day of July of that year, and about the time of the completion of said building, and while the Tinkers were in possession of the same, they executed in payment for the material to the plaintiff a note of $950, securing the same by a mortgage on said property, which said mortgage was duly recorded on the 29th day of July. In November of the same year the Tinkers entered into a contract with the defendant John A. Smith for the sale of said property to him for the sum of $1,950, the consideration to be paid on December 1st, and it was orally agreed between Tinkers, Smith, and the secretary of the Townsite Company that $495 should be paid to the Townsite Company, $250 on account of the lot, and the balance to be used in payment of small bills due the creditors of the Tinkers, and out of the balance the debt due the plaintiff should be paid; that thereupon the said defendant Smith entered into possession of said property, but the contract between the Tinkers and Smith was neither acknowledged nor recorded; that on or about the 15th day of April, 1905, the said Townsite Company executed a deed of conveyance of said lot to said defendant Smith for the sum of $250, which deed was duly recorded on April 17th; that on or about April 17, 1905, Smith and wife conveyed the property to the defendants Ellsworth and wife for the consideration of $2,000, by deed which was duly acknowledged and recorded; that on the 22d day of April Ellsworth and wife executed and acknowledged a deed for said property, and which deed at the time of its execution did not contain the name of any grantee or any consideration; and that thereafter, on the 21st day of June, the property was sold

to the defendant and appellant H. B. Williams, and his name was inserted, and also the consideration of $2,500. The court further found that the said defendant Williams, at the time of said purchase, had notice of sufficient facts and circumstances to put him upon inquiry as to the existence of plaintiff's mortgage, and that he did not pay a good and fair consideration for the property so received by him.

The court, in its conclusions of law, after finding the amount due the plaintiff on its mortgage, concludes that the defendant, H. B. Williams was not a purchaser in good faith for full consideration, and that Smith, Ellsworth, and Williams took and accepted their conveyances to said property with full notice and knowledge of the existence of plaintiff's mortgage, and are bound thereby. It is disclosed by the record that the following questions were submitted to a jury called by it to assist in the determination of the case: "Q. Did the defendant H. B. Williams have notice of circumstances sufficient to put a prudent man upon inquiry as to the existence of plaintiff's mortgage? A. Yes. Q. Did the defendant H. B. Williams in his trade, give a fair and reasonable consideration for the Lake Andes lot? A. No." It will be observed from the foregoing statement of facts as found by the court, that the title of the property was originally in the Townsite Company; that Tinker and wife never received any deed from the Townsite Company, and had no title of record at the time they executed their mortgage to the plaintiff that the Townsite Company conveyed the property to Smith and wife by deed, which was recorded; that thereafter Smith and wife conveyed the property to Ellsworth and wife by a deed duly recorded and that Ellsworth and wife conveyed the property to the defendant Williams by deed duly recorded; but, as will be noticed by the conclusions of the court, Smith and wife, Ellsworth and wife, and the defendant Williams were not purchasers in good faith, but were such with full notice and knowledge of the plaintiff's mortgage, and are bound thereby.

It is contended by the defendant Williams that, as he had no actual notice of the plaintiff's mortgage at the time he purchased the property, he cannot be held to have had constructive notice,

for the reason that at the time he purchased the property, which, as stated, was originally vested in the Townsite Company, had passed by regular conveyances from the company to Smith and wife, from Smith and wife to Ellsworth and wife, and from Ellsworth and wife to himself, and that there was nothing upon the record showing any title in Tinker and wife, who executed the mortgage to the plaintiff, and that therefore the conclusion of the court that the defendant had notice of the existence of the plaintiff's mortgage at the time he purchased the property is not supported by the evidence. It is disclosed by the evidence that the defendant Williams was a resident of Illinois at the time he purchased the property; that he had heard that the property was for sale through his employer at the town in which he lived in Illinois; that he came to Lake Andes, arriving there late in the afternoon, made a contract for the purchase of the property from the Ellsworths that evening, took the deed for the same, which appeared to have been executed on the 22d day of April, conveying to the Ellsworths a quarter section of land in Brule county in exchange for the town property, and returning home on the following morning; that no abstract to the town property was obtained by him, and no examination of the record of the office of the register of deeds was made by him, and no inquiries were made by him of the person in possession of the property, of the officers of the Townsite Company, or of any person other than the Ellsworths as to the title or incumbrances upon the property. The blanks in the deed from Ellsworth were filled up by the Secretary of the Townsite Company, who had full knowledge of all the facts with reference to the title and of plaintiff's mortgage. He stopped at the hotel situated on the property conveyed to him by the deed, but made no inquiries of the hotel keeper in possession of the same.

It is insisted by the plaintiff, in support of the court's conclusion, that one purchasing real property is charged with constructive notice of all instruments recorded of which he could have acquired actual notice by an examination of the record, and that he is not only charged with notice of conveyances appearing in the regular chain of title, but also with notice of all instruments recorded appearing upon the numerical index provided for by our Code, and

that, had the defendant Williams examined the records in the office of the register of deeds, or a full abstract of the title of the property, he would have acquired actual notice of plaintiff's mortgage, and that, having acquired such actual notice of the mortgage, he was required to make such investigation in regard to that mortgage as a prudent man would ordinarily be required to make, and that, had he made such inquiries, he would have learned the fact that Tinker and wife, at the time they executed the mortgage to the plaintiff, had acquired a good equitable title to the property, and that the property properly was subject to such mortgage. we are inclined to agree with the plaintiff in its contention. Sections 868 to 871, inclusive, of our Revised Political Code, read as follows: "The register of deeds shall keep a numerical index of deeds, mortgages, and other instruments of record in their respective offices affecting or relating to the title to real property. There shall be kept one index of the deeds and contracts and other instruments, not liens merely, and another index of the mortgages and other liens, which indexes shall be substantially or as near as may be in the following forms. [Here follows the form of index.] The register of deeds of each county in this state shall keep grantor and grantee indexes of the deeds, mortgages and other instruments of record on file in their respective offices, affecting or relating to the title of real property, in addition to the numerical indexes as now kept. There shall be kept one index of the deeds and contracts and other instruments not liens merely, and another index of the mortgages and other instruments which are liens, which indexes shall show the names of the grantors and grantees, dates of instruments, dates of filings and descriptions of property affected." It will be observed, from the reading of these sections, that a party purchasing real property is not only required to examine the indexes of grantors and grantees, mortgagors and mortgagees, in his chain of title, but also required to examine the numerical index, to ascertain whether there are other conveyances or incumbrances affecting said property not in the chain of title. All public officers are presumed to have performed their duty, and hence the register of deeds of Charles Mix county must be presumed to have properly kept the indexes required by these sections. Clearly, therefore,

if the defendant Williams had examined the record in the register of deeds' office, or if he had examined a properly prepared abstract of title, he would have acquired actual knowledge of the existence of the plaintiff's mortgage, and, having acquired such knowledge of the mortgage, the conveyance to him was subject to the lien of that mortgage. We may assume that, upon discovery of the existence of that mortgage, inquiries of Smith, in possession of the hotel, or of the secretary of the land Company, who were familiar with all the facts in the case, he would have ascertained the fact that plaintiff's mortgagors had a good equitable title to the property upon which they could give a valid mortgage, subject, of course, to the $250 due the Townsite Company.

It is clear from the findings of the court that Smith and the secretary of the Townsite Company had full knowledge of the mortgage, as the court finds that at the time the Tinkers transferred their interest to Smith it was orally agreed by and between the said Tinker, Smith, and the Townsite Company, through its authorized agent, that no deed to said premises should be made or executed until the plaintiff's mortgage was paid. While in some jurisdictions it has been held by the courts that a party purchasing property is only charged with constructive notice of conveyances made in the chain of his title, such a ruling is not applicable in this state, in view of the provisions of our Code before quoted, and the purchaser must be held here as charged with notice of all the information that might have been obtained by an examination of all the indexes required to be kept by the register of deeds relating to the property. This court, in Bernardy v. Col. Mortgage Company, 17 S. D. 649, 98 N. W. 166, called attention to the fact that our Political Code requires a numerical index to be kept of both city and farm property, as well as the index usually required to be kept by the register of deeds. The decisions, therefore, cited by the counsel for the defendant, cannot be regarded as authority in this court, not having been made in states having provisions, similar to those above quoted, requiring numerical indexes as contained in our Code.

We are of the opinion that the findings and conclusions of the court were clearly sustained by the evidence, and that the court

was right in holding that the property was subject to plaintiff's mortgage, and that the defendant Williams' title was subject thereto.

Finding no error in the record, the judgment of the court below, and order denying a new trial, are affirmed.