## STATE ex rel OCHSENREITER v. BLEGEN, County Auditor (HETLEY, Intervener.)

Laws 1909, c. 90, § 1, makes one ineligible for the office of county superintendent of schools who does not hold a certificate of a certain grade. Section 2 provides that, if any person file a sworn statement with the county auditor 15 days before any primary or other election that one whose name has been certified to the county auditor as a candidate for county superintendent is not qualified to hold such office, the candidate shall file with the auditor proof of his qualification, and, if he does not do so, his name shall not be placed upon the official ballot by the county auditor. Chapter 297, § 10, makes the filing of a nominating petition, together with the candidate's declaration that he will qualify if nominated and elected, sufficient to require his name to be printed upon the primary ballot without any other condition, and section 63 provides that all successful party candidates whose nomination papers were filed in the office of the county auditor, etc., shall have their names printed upon the official ballot for use at the succeeding election. **Held,** that the county auditor would not be prohibited from placing upon the ballot the name of one who was nominated as the candidate of the Republican party for the office of superintendent of schools, at the suit of an elector of that party on the ground that such candidate would not be eligible for the office under section 1 if elected, where no objection was made before the primary election as provided in section 2; it being permissible for a political party to nominate an ineligible candidate in the absence of such section.

Eligibility to hold a political office can be questioned after election only in a direct proceeding brought for that purpose to which the officer is a party.

The official acts of a county superintendent of schools will be valid so long as he is permitted to exercise the office, though he be ineligible thereto.

The Supreme Court will not prohibit by writ of prohibition the performance of an official's duty expressly required by statute.

It must be presumed that a county auditor will perform his official duties at the proper time.

Upon denying a writ of prohibition to prevent the placing of a candidate's name upon an election ballot for the reason that no objection was taken to the candidate's eligibility before the primary election as required by statute, so that it was the county auditor's duty to place his name on the ballot, it will not be determined whether the candidate is in fact eligible to hold the office, as that question may never arise.

(Opinion filed, October 4, 1910.)

Prohibition by the State, on the relation of L. G. Ochsenreiter, against C. E. Blegen, as County Auditor of Day County, and another, as intervenor. Application denied.

*Sears & Potter,* for relator. *Lund & Coomes* and *Anderson & Waddel,* for defendant and intervener.

HANEY, J. This is an original application for a writ of prohibition commanding the defendant, as county auditor of Day county, to refrain from printing the name of J. H. Hetley, as the Republican party candidate for superintendent of schools, on the official ballots to be voted in that county at the coming general election. The defendant appeared in response to an order to show cause previously issued. Hetley also appeared and was granted leave to file a complaint in intervention, subject to objections to be subsequently considered. Thereafter evidence was introduced by the respective parties and the cause taken under advisement. The material facts are undisputed. The relator is an elector of Day county and a member of the Republican party who now intends to vote the Republican party ticket at the coming general election. Defendant is the auditor of Day county. The intervener was one of two Republican candidates for the office of superintendent of schools at the June primary election. He received 1,133 votes; his opponent 363. He then was, and now is, an elector of Day county. He is a graduate of the Michigan State Normal School. He holds a life certificate issued by the Michigan board of education, on June 24, 1896, authorizing him to teach in all the public schools of that state from and after that date. On October 5, 1901, he received from the superintendent of public instruction of this state a certificate authorizing him to teach in any of the public schools of this state for five years from and after that date. No other teacher's certificate has been issued to him in this state.

Notwithstanding it appears that the intervener is the choice of the Republican party in Day county as its candidate for superintendent of schools, the relator contends the defendant should be prohibited from placing his name on the official ballots to be voted at the coming general election, for the reason that the

intervener will not be eligible to hold the office if elected. Chapter 90, Laws 1909, contains these provisions:

"Section 1. No person shall be eligible to hold the office of county superintendent who is not the holder of a regular first grade certificate or a certificate of higher grade valid in the state at the date of his induction into such office and at least one year previous thereto.

"Sec. 2. That if any person shall file any statement on oath, with the county auditor 15 days prior to the holding of any primary election, or other election, that any person whose name has been certified to the county auditor, as a candidate for county superintendent, upon any ticket, is not qualified under the provisions of this act, to hold the office of county superintendent, said candidate shall, within five days after being notified of said statement being filed, file with the county auditor full proof that he is qualified to hold said office, and if he fails to do so, the name of said person shall not be placed upon the official ballot as a candidate by the county auditor."

Independently of these provisions, the statutes of this state relating to party nominations to state and county offices are silent on the subject of eligibility. As to all elective offices, except the one involved in this proceeding, there is no statutory provision precluding any political party from presenting an ineligible candidate if it chooses so to do. If it were not for the second section of the chapter above quoted, there would be no law forbidding the nomination of any member of the Republican party, by that party, to the office of superintendent of schools. In absence of legislative regulation, an organized political party may nominate whom it pleases. But with respect to candidates for the office of county superintendent the Legislature has seen fit to regulate the exercise of such power, and the extent and effect of such regulation must be considered. It was clearly intended that no person who is ineligible shall either be nominated or elected when his ineligibility is ascertained in the manner prescribed by the statute. In other words, if the intervener did not possess the requisite certificate, and the proper objection had been

interposed, it would have been the duty of the defendant to have refused to place his name on the primary ballots. No objection having been interposed, it was his duty to place his name thereon. Defendant performed such duty, and the intervener received a majority of the votes cast for the office for which he was a candidate. Was he not duly nominated? Relator contends he was not because, by being a candidate, he necessarily represented that he was eligible, when, in fact, he was not, and thus committed a fraud upon the Republican electors of his county. The contention is not tenable. It rests on a wrong interpretation of the statute. The statute did not require any declaration as to the intervener's eligibility. This is its language: "The filing of a nominating petition within the time and in the manner and form provided in this act, together with the declaration of the candidate that he will qualify, if nominated and elected, shall be sufficient to require that his name be printed upon the primary ballot. No other condition shall be imposed." Laws 1909, c.297, § 10. The words "will qualify" simply mean that the candidate will, if nominated and elected, take the required oath and execute a bond if one be required.

It is an elementary rule universally recognized that eligibility can be questioned after election only in a direct proceeding to which the officer is a party. 20 Cyc. 1380. Though ineligible, the official acts of the intervener, if elected, will be valid so long as he is permitted to retain the office. If elected, his ineligibility, if it exists, will not prevent him from taking the required oath or from executing a bond, if one be required; it will not prevent him from doing precisely what the statute required him to declare he would do; nor will it per se prevent him from discharging the duties of his office. Clearly, then, he was not guilty of any legal or moral wrong in allowing his name to go on the primary ballots, even if he knew he did not have the certificate required by the statute. Again, as the statute afforded an opportunity for any one to file a statement which presumptively would have resulted in the exclusion of the intervener's name from the primary ballots, if he was ineligible, and no such statement was filed, the validity of the intervener's nomination should not now be

questioned on that ground. And this is so whether or not the alleged ineligibility was known to the relator before the primary was held. He was bound to know the law and should have informed himself as to the facts. His objection comes too late. It must be held that the intervener was duly nominated. The statute declares: "And all successful party candidates for nomination for elective offices whose nominating papers were filed in the office of the Secretary of State, or in the office of any county auditor, under the provisions of this act, shall have their names as such candiates printed upon the official ballot for use at the succeeding November election, and the name of no other party candidates for the same offices in the same political parties shall appear thereon." Laws 1909, c. 297, § 63. Consideration of these provisions, in connection with chapter 90, supra, leaves no room for doubt as to the duty of the auditor when no statement is filed in his office. He is expressly directed to place the name of the candidate on the ticket. Manifestly, this court should not prohibit the performance of an official duty required by the express terms of the statute.

It is stated in defendant's return to the order to show cause "that unless prohibited from so doing he will place the intervener's name on the official ballots." This should be interpreted to mean that he will do so unless prohibited by this court or by the statute, and it must be presumed he will properly perform his duty if a statement shall be hereafter filed in his office. Until a statement shall have been filed, this court should not attempt to direct or control the defendant's conduct. It may be suggested that no one who is ineligible should ever be recognized as a candidate. Such a person may or may not be elected; he may or may not be permitted to hold the office if elected; but, as heretofore stated, the power of an organized political party to present the name of an ineligible candidate has no limitations other than those imposed by the Legislature. As to all elective offices, this power, in this state, has been restricted only with respect to the office of superintendent of schools, and as to that office an ineligible candidate may be voted for at the primary and general election unless some one files the prescribed statement.

The question is not whether an ineligible person should ever be recognized as a candidate. That is a matter to be determined by the Legislature. Until it shall have declared that such a person shall not, under any circumstances, stand as a candidate, political parties will continue to possess the power to nominate such persons, and this court will be without authority to prevent them from doing so. In this instance, it is not the Republican party of Day county that is objecting to the intervener's candidacy. Nor is any rival candidate. The relator is but one of many members of his party. He in no sense represents such party. Therefore his right to oppose the printing of the intervener's name on the official ballots rests alone on the statute giving the right to file the prescribed statement, and, as no such statement has been filed, he clearly has no right to maintain this proceeding.

Whether the decision of the auditor, after a statement has been filed, should be regarded as final, need not now be considered. Nor is it necessary or proper at this time to determine whether or not, upon the facts established in this proceeding, the the intervener is eligible to the office to which he has been nominated. Neither question may ever rise. Of course, nothing in this decision should be so construed as to preclude an investigation, after election, of the intervener's right to hold the office if he should be elected.

Upon the undisputed facts, the relator is not entitled to any relief, and his application is denied.